OPINION *Page 2 
{¶ 1} Appellant Angela M. Kelly appeals her conviction in the Alliance Municipal Court on one count of assault, a misdemeanor of the first degree, in violation R.C. 2903.13. The underlying facts are as follows.
 {¶ 2} On May 21, 2007 Tineisha Pearson, who was 18 years of age and approximately six months pregnant, was walking near the corner of Summit and Linden Avenue in the Alliance, Ohio. T. at 72. Appellant was driving a vehicle in this area with Tracy Howell as a passenger. Id. Mr. Howell was the former stepfather of Ms. Pearson. Appellant, who was 42 years of age, was the girlfriend of Mr. Howell. Id. Ms. Pearson does not like or get along with Appellant. Upon seeing Appellant with her stepfather, Ms. Person said "I thought that bitch was in jail." T. at 74. In response, Mr. Howell called Ms. Pearson over to his car to speak to her. Mr. Howell cautioned Ms. Pearson about her comments regarding Appellant. T. at 74. Ms. Pearson continued to explain to Mr. Howell why she does not like Appellant while ignoring the presence of Appellant in the vehicle. Id. Appellant then put the vehicle in drive and began to pull away from the curb yelling something to Ms. Pearson. T. at 75. Ms. Pearson yelled "What?" back to Appellant. Id. Appellant then put the car in reverse, got out of the car, and began to assault Ms. Pearson. Id. Ms. Pearson testified that Appellant threw the first punch, but Ms. Pearson fought back and landed the first punch. T. at 74-75.
 {¶ 3} During the course of the altercation, Ms. Pearson testified that Appellant attempted to punch her, pulled her hair, pushed her to the curb and then straddled her and jumped on her stomach saying "Bitch, I am going to kill you and your baby". T. at 77. She further testified that Appellant scratched her face during the assault. (Tr. 85). *Page 3 
 {¶ 4} Mr. Howell (who was also charged in the assault but acquitted at jury trial) entered the altercation and Ms. Pearson's sisters, Lakeisha Bristow and Nikeita Bristow as well as her brother, Dion, and two friends, Josh and Jeff Alexander, attempted to pull Appellant and Mr. Howell off of Ms. Pearson. T. at 77-78.
 {¶ 5} When Dion finally pulled Appellant off of Ms. Pearson, Appellant still had a hold of her hair and was attempting to kick her in the stomach. T. at 78-79. After being separated, and as Appellant was leaving, she again yelled "Bitch, I am going to kill you and your baby". T. at 79. Ms. Pearson then went to the hospital and was admitted for observation for approximately four hours. Id. Hospital personnel performed first aid on the scratches Ms. Pearson received in the fight and monitored the heart rate of the baby. T. at 79, 94. During her testimony, Ms. Pearson also testified that when Appellant knocked her down her tailbone was bruised and it was hard for her to sit and stand straight and she walked with a limp and that her stomach hurt and she was very worried about her baby. T. at 81.
 {¶ 6} Appellant was charged with two counts of assault in violation of R.C. 2903.13, a misdemeanor of the first degree, against Ms. Pearson and Nikeita Bristow.
 {¶ 7} The case proceeded to trial. At trial, Ms. Pearson, Lakeisha Bristow, Nikeita Bristow and Jeff Alexander testified about the sequence of events. Each of them indicated that there were various assaults committed by Appellant and Mr. Howell upon Tineisha Pearson, Nikeita Bristow and Lakeisha Bristow.
 {¶ 8} The case was ultimately submitted to the jury for deliberation. The jury found appellant guilty of assault with regard to Ms. Pearson and not guilty of assault *Page 4 
with regard to Nikeita Bristow. Mr. Howell was found not guilty of assault against Ms. Pearson and Lakeisha Bristow.
 {¶ 9} Appellant was sentenced to 60 days at the Stark County Jail with all but 30 days suspended and credited with 14 days served in lieu of days. The trial court fined Appellant $250.00 with a $100.00 credit for anger management.
 {¶ 10} Appellant now appeals and raises two Assignments of Error:
 {¶ 11} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 12} "II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 I. {¶ 13} Appellant claims her conviction for assault was not supported by sufficient evidence and against the manifest weight of the evidence. We disagree.
 {¶ 14} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 15} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus. *Page 5 
 {¶ 16} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 17} Appellant was convicted of assault, a misdemeanor of the first degree, in violation of R.C. 2903.13 which states:
 {¶ 18} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 19} "(B) No person shall recklessly cause serious physical harm to another or to another's unborn.
 {¶ 20} "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree."
 {¶ 21} Appellant asserts that the State failed to prove that she caused physical harm to Ms. Pearson in the assault. The statute does not require proof of actual harm merely the attempt to cause harm. R.C. 2903.13(A). *Page 6 
 {¶ 22} Ms. Pearson testified that Appellant got out of the car and "charged at [her]." T. at 75. Appellant then swung at her and missed because Ms. Pearson side stepped the swing. Id. Ms. Pearson began fighting back and Appellant grabbed her hair. T. at 77. Appellant pushed Ms. Pearson causing her to fail and hit her tailbone. T. at 77. Further, Appellant yelled, "Bitch, I'm gonna kill you and your baby" numerous times. T. at 77, 79. Ms. Pearson testified that she had a bruised tailbone and walked with a limp. T. at 81. Ms. Pearson was transferred to the hospital via ambulance and was kept for observation for approximately four hours. T. at 79-80.
 {¶ 23} Lakeisha Bristow, Ms. Pearson's sister, testified that she heard arguing. She turned around and saw Appellant on top of Ms. Pearson while hitting her. T. at 104-105.
 {¶ 24} Nikeita Bristow, another sister of Ms. Pearson, testified that Appellant ran up to Ms. Pearson and started punching her. T. at 118. Further, she testified that appellant was on top of Ms. Pearson and was pulling her hair. T. at 120.
 {¶ 25} Jeff Alexander, a friend of Ms. Pearson's sisters, testified that he was unsure who was driving the vehicle. T. at 136. He testified that Appellant charged Ms. Pearson. T. at 137. Appellant then picked Ms. Pearson up and dropped her on the ground, got on top of her and started hitting her. T. at 138. He testified that Appellant's legs were on either side of Ms. Pearson's body and she was putting weight on Ms. Pearson's pregnant body. T. at 139. According to testimony, appellant is larger in stature than Ms. Pearson. *Page 7 
 {¶ 26} Based upon the evidence presented we find the conviction for assault was not against the manifest weight or sufficiency of the evidence. Appellant's first assignment of error is overruled.
 II. {¶ 27} In her second assignment of error, Appellant argues that her counsel was ineffective at trial for failing to give an opening statement and for failing to follow up on statements made by the victim on cross-examination.
 {¶ 28} The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St .3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
 {¶ 29} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudice by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the Strickland test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. State v. Godfrey (Sept. 2, 1999), Licking App. No. 97CA0155. Trial counsel is entitled to a strong presumption that all *Page 8 
decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267.
 {¶ 30} Appellant bears the burden of establishing there is a genuine issue as to whether she has a colorable claim of ineffective assistance of appellate counsel. State v. Spivey, 84 Ohio St.3d 24, 1998-Ohio-704,701 NE 2d 696.
 {¶ 31} Appellant first argues her counsel was ineffective for failing to give an opening statement. Counsel for co-defendant Howell gave a combined opening statement on behalf of both defendants. Counsel stated: "Ladies and Gentlemen, again good morning. Myself and Attorney Kelley Murray, we don't have a lot to tell you right now. And that's because like we talked about in voir dire, the State of Ohio's Prosecutor is the only person here that has to prove this case to you. We do not have to prove anything to you. * * * This is a criminal case, so the Prosecutor will go first. And Mr. Zumbar again is the one that has to prove this case to you, not us. We just ask that you listen to the witnesses' testimony and carefully consider all of the evidence before making a decision today. Thank you." T. at 70-71.
 {¶ 32} The opening statement was brief but is well within trial strategy, as it was defense counsel's strategy to reinforce that the State had the burden of proof. Ineffective assistance of counsel claims may not be based upon debatable strategic and tactical decisions.State v. Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643. Further, the record as whole reflects the two defense attorneys engaged in a preplanned joint trial strategy. We do not find this to be ineffective assistance of counsel. In fact, this strategy may have been effective as Appellant was acquitted of one count of assault and co-defendant Howell was also acquitted. *Page 9 
 {¶ 33} Appellant next contends her trial counsel failed to follow up on statements made by Ms. Person on direct examination regarding non-violent encounters between her and the Appellant. Specifically, Ms. Person testified: "There's been a couple times to where me and Angela had run-ins and to where I expressed how I did not like her to her face. And which she's never attempted to assault me or I've never attempted to assault her either. I meant — that day, I don't know. I don't know. Maybe she got tired it, but." T. at 80. While it is correct that Appellant's trial counsel did not pursue this area of questioning upon cross-examination of Ms. Pearson, trial counsel, as well as co-defense counsel, did question Ms. Pearson at length about the details of the encounter with Appellant on the day in question. Appellant argues prior non-violent encounters between Ms. Pearson and Appellant are relevant to the credibility of Ms. Pearson. However, we find trial counsel's failure to further develop this area of questioning did not fall below the objective level of reasonableness nor would the results of the proceedings have been different. Trial counsel may have very well avoided this area as it may reinforce to the jury there was ill-will between the parties that escalated on the day in question.
 {¶ 34} Accordingly, Appellant's second assignment of error is overruled. *Page 10 
 {¶ 35} The judgment of the Alliance Municipal Court is affirmed.
 By: Delaney, J. Hoffman, P.J. and Wise, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Alliance Municipal Court is affirmed. Costs assessed to Appellant. *Page 1